**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.  07-22549-CIV-UNGARO/SIMONTON**
<u>CONSENT CASE</u>

**DORIS BERROCAL,**

      **Plaintiff,**

**v.**

**MOODY PETROLEUM, INC., et al.,**

      **Defendants.**

_____/

<u>**ORDER ON PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**</u>

      **THIS CAUSE is before the Court upon Plaintiff's Motion for Partial Summary
Judgment [D.E. 38].  The parties have consented to full disposition by the undersigned
Magistrate Judge [D.E. 23]. The Honorable Ursula Ungaro, United States District Judge, has
entered an order referring this matter in accordance with the parties' consent [D.E. 26].
On February 11, 2009, an Oral Argument was held before the undersigned on Plaintiff's
Motion for Partial Summary Judgment.**

      **After careful consideration of the Parties' memoranda, the relevant case law, the
record as a whole, and after hearing oral argument, the Court hereby GRANTS, in part,
Plaintiff's Motion for Partial Summary Judgment against Defendants Moody Petroleum and
Claude Dormoy.**

      **I.  <u>Factual and Procedural Background</u>**

      **Plaintiff Doris Berrocal filed this lawsuit against Defendants Moody Petroleum, Inc.,
Dorcla, Inc., and Claude Dormoy seeking to recover money damages for unpaid overtime**

wages pursuant to the Fair Labors Standards Act, 29 U.S.C. § 201, et seq., ("FLSA") [D.E. 1]. Plaintiff alleges that both corporate Defendants, Moody Petroleum, Inc. ("Moody") and Dorcla, Inc., ("Dorcla"), are gas station businesses that are owned and controlled by individual Defendant Claude Dormoy.  In the Complaint, Plaintiff alleges that she was employed by both companies as a gas station attendant/cashier from between "2000-2001" through September 15, 2007 at a rate of $7.50 an hour [D.E. 3].  Plaintiff alleges that she worked an average of 84 hours a week but was not paid overtime in excess of forty hours per week. Plaintiff estimates her damages, including liquidated damages, to be $49,500 and further alleges that the Defendants knew and/or showed reckless disregard of the FLSA provisions concerning the payment of overtime wages to her and other similarly-situated employees.   In addition to seeking compensatory damages for unpaid overtime and liquidated damages from all Defendants, jointly and severally,  Plaintiff seeks to recover reasonable attorney's fees.

All three Defendants have filed individual Answers to Plaintiff's Complaint asserting, *inter alia*, that Plaintiff is an exempt employee under the FLSA and that Moody Petroleum was not Plaintiff's employer [D.E. 9,10, 30].

Plaintiff has filed a Motion for Partial Summary Judgment against Defendants Moody Petroleum, Inc., and Claude Dormay.   In that Motion, Plaintiff seeks summary judgment: 1) finding liability against Defendant Moody Petroleum for failing to pay Plaintiff overtime as required by the FLSA; and,  2) finding that Claude Dormoy is individually liable as a

corporate officer of Moody Petroleum for the FLSA violations.[1]

In support of her Motion, Plaintiff has submitted the Deposition of Claude Dormoy taken on January 28, 2008 [D.E. 38-2] and Defendant Claude Dormoy's Answers to Interrogatories [D.E. 38-3].  The Plaintiff however has not submitted an affidavit or sworn testimony from Plaintiff Doris Berrocal.

Defendants have filed an Opposition to Plaintiff's Motion for Partial Summary Judgment asserting that Plaintiff was an independent contractor while she worked for Defendant Moody Petroleum and as such, is not entitled to coverage under the FLSA.   In support of their position, Defendants also rely upon the Deposition of Claude Dormoy and have not cited to any other testimony or evidence.

On February 11, 2009, the undersigned heard oral argument on the Plaintiff's Motion for Partial Summary Judgment.   Plaintiff's counsel argued that whether Plaintiff was an independent contractor is an issue of law for the court and that based upon the testimony of Claude Dormoy in his deposition and Mr. Dormoy's Answers to the Interrogatories that it was clear that Plaintiff was an employee of the Defendants.

More specifically, at the hearing, counsel for Plaintiff argued that Doris Berrocal was economically dependent on the Defendants in her job and thus was an employee of the Defendants.  Plaintiff asserted that the fact that Ms. Berrocal worked for the Defendants for five years, performed services integral to the Defendants' corporation by running the

---

[1]  Plaintiff concedes that the issue of whether the other corporate entity, Dorcla, Inc., is a joint employer is an issue that is not appropriate for summary judgment and must be resolved at trial.  Plaintiff similarly concedes that the issue of whether the FLSA violations were intentional must also be resolved at trial.

cafeteria and working the cash register, was "hired" by Mr. Dormoy as a cook which did not require special skills, had her rate of pay set by Mr. Dormay on an hourly basis, and had her supplies bought and paid for by the Defendants all support this conclusion.

Defendants, on the other hand, argued that the cafeteria where Plaintiff worked was a side business for the gas station and not an integral part of Defendants' corporation.  In addition, the Defendants asserted the fact that Plaintiff operated the cafeteria independently and was only required by Defendants to serve food from 11:00 a.m. daily, was not supervised nor told what food to buy or serve or who to purchase it from, received $60.00 a day unless she was absent and then her pay would be discounted, and was the only person in charge of food preparation which required training demonstrate that Plaintiff was an independent contractor.[2]

## II. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure authorizes entry of summary judgment where the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is properly regarded not as a disfavored procedural shortcut but, rather, as an integral part of the federal rules as a whole, which are designed to secure a just, speedy, and inexpensive determination of every action. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The court's

---

[2]  Although Defendants did not file a cross-motion for summary judgment, they argued, "Under the totality the circumstances, Plaintiff was an independent contractor or, in the alternative, there are issues of fact as to whether Plaintiff was an independent contractor which preclude summary judgment on this issue." [D.E. 41 at 5-6].

focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson* Foods. Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party has the burden to establish the absence of a genuine issue as to any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Allen v. Tyson Foods, Inc.*, 121 F.3d, at 646. Once the moving party has established that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law, the burden shifts to the non-movant to come forward with a response setting forth "specific facts" showing that there is a genuine issue for trial. Thus, the party opposing summary judgment may not rest upon the mere allegations or denials of the pleadings, but must present sufficient evidence favoring the non-moving party for a jury to return a verdict in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249. Conclusory allegations will not suffice to create a genuine issue. There must be more than a scintilla of evidence; there must be "substantial conflict in evidence to support a jury question." *Tidewell v. Carter Prods.*, 135 F.3d 1422, 1425 (11th Cir. 1998), *quoting Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989). Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Allen v. Tyson Foods*, 121 F. 3d, at 647.

However, Rule 56(c) mandates the entry of summary judgment against the party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure

of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

The Eleventh Circuit has consistently held that "[a] determination of employment status under the FLSA and the AWPA is a question of law." *Antenor v. D & S Farms*, 88 F.3d 925, 929 (11th Cir.1996); *see also Charles v. Burton*, 169 F.3d 1322, 1329 (11th Cir.1999) (holding same).  In this case, the underlying facts that are essential to the employment inquiry are not in dispute.  Both Parties rely upon the deposition testimony of Claude Dormoy, for support of their respective positions, and although they disagree about the legal interpretation of those facts, they do not disagree as the facts, themselves.  In addition, to the extent that Plaintiff has relied upon Claude Dormoy's Answers to Interrogatories, the Defendants have not submitted additional evidence which contradicts those Answers.  Accordingly, summary judgment on the issues raised in Plaintiff's Motion for Partial Summary Judgment may appropriately be determined by this Court.

III. <u>Discussion and Analysis</u>

A. <u>Undisputed Facts</u>

1)   <u>Deposition of Claude Dormoy</u>

The following facts were obtained from the deposition of Claude Dormoy, the individual Defendant in this matter.  Claude Dormoy is the President and fifty percent owner of Moody Petroleum, known as Moody Amoco, a franchise gas station, located in Miami, Florida.  Between 1994 and 2006, Mr. Dormoy also owned Dorcla Inc., known as South Dade Amoco, another gas station located in Miami, Florida.

Moody Amoco is open twenty-four hours a day, seven days a week and contains a

cafeteria and store inside. The  employees work in three shifts from 7:00 a.m. to 3:00 p.m., from 3:00 p.m. to 11 :00 p.m., and from 11:00 p.m. to 7:00 a.m.  During weekdays, usually two employees are working on the premises. Sometimes three employees work in the afternoon.  During the night, however only one employee works.

Mr. Dormoy hired Plaintiff Doris Berrocal at Moody Amoco in either 2002 or 2003. At the time,  Ms. Berrocal was working at the Dorcla gas station where she had been working since 2000.  Ms. Berrocal was hired at Moody to run the fast food cafeteria during lunch time, which was between 11:00 a.m. to 4:00 p.m.

When Ms. Berrocal was first hired, Mr. Dormoy told her that she would have to serve lunch from 11:00 a.m. to 4:00 p.m., six days a week; and, according to Mr. Dormoy, Ms. Berrocal knew from the beginning that she could not arrive as late as 10:30 a.m. to serve lunch at 11:00 a.m. because she would not have enough time to prepare.  Ms. Berrocal arrived at work every day between 8:00 a.m. and 8:30 a.m. in order to prepare the food.  Ms. Berrocal did not have to clean up after the lunch service and so she was always able to leave at 4:00 p.m.  This schedule never changed during the time she worked at Moody Amoco.

Because Ms. Berrocal had a bad back, sometimes the cashier would assist when food was delivered, and Ms. Berrocal would work as the cashier at Moody to cover for that employee.  When Ms. Berrocal worked in the cafeteria, only one other Moody employee worked in the gas station, except for between the hours of 3:00 p.m. and 4:00 p.m., when an additional cashier worked.

In her position, Ms. Berrocal had the right to select the menu, decide who the

7

suppliers were and order the supplies.  Mr. Dormoy did not tell her what to prepare and she was not "supervised" in the preparation of the food by Mr. Dormoy or any other Moody Petroleum employee.  Moody purchased the supplies Ms. Berrocal needed for the cafeteria and Ms. Berrocal did not use any of her own money for those supplies.  Ms. Berrocal would have her lunch while she worked; and, if a customer came during that time, she would have to interrupt her lunch and attend to the customer.

Moody Petroleum received all of the revenue  from the sales made at the cafeteria and Ms. Berrocal did not receive a percentage of the sales. However, Mr. Dormoy testified that he told Ms. Berrocal that if she was losing money in the cafeteria, he was going to "close it down."

Ms. Berrocal was paid $60 a day based upon a pay rate of $7.50 hour.  Her daily pay did not vary based upon whether she arrived at 8:00 a.m. or 8:30 a.m..  Ms. Berrocal never missed a day of work; however, if she had missed a day, her pay would have been reduced for that day.

Employees at Moody Amoco were paid hourly and received pay rates ranging between $6.50 an hour and $10.00 an hour.  There was no time clock at Moody Amoco, but the head cashier at Moody worked a set shift and his/her hours were tracked through the cash register. The head cashier was responsible for keeping track of the hours that other employees worked when their shift overlapped with his/hers.   None of the employees at Moody were paid overtime because Mr. Dormoy planned the work schedule so no one ever worked overtime. Ms. Berrocal was paid in cash, while the other employees were paid in checks.  Ms. Berrocal's hours were not written down or recorded. Mr. Dormoy would see

8

when she arrived.   Mr. Dormoy testified that although Ms. Berrocal worked eight hours a day, six days a week, she was not paid overtime because Mr. Dormoy considered her an independent contractor. Ms. Berrocal stopped working for Moody Amoco in early September 2007.   Mr. Dormoy testified that he closed the cafeteria when it started losing money and Ms. Berrocal began screaming at one of the cashiers and Mr. Dormoy decided, "...between the two, she has to go."

### 2)   Defendant Claude Dormoy's Answers to Interrogatories

In further support of its Motion for Partial Summary Judgment, Plaintiff has submitted Claude Dormoy's Answers to Interrogatories [D.E. 38-3].  In those Answers, Claude Dormoy is identified as the person who has the power to hire and fire employees, supervise and control employees, determine the rate and method of payment for employees, maintain employment records for employees; and, as the person responsible for ensuring that there were sufficient funds to make payroll.  Plaintiff points to these answers as evidence that Plaintiff was an employee and Claude Dormoy was the Plaintiff's employer, as each Interrogatory references employees "including but not limited to Plaintiff".[3]  The Defendants interposed no objections to the interrogatories and did not specify in its Answers that it did not consider the Plaintiff an employee.

However, the undersigned does not find the Defendants' Answers to Interrogatories

---

[3]  For example, Interrogatory 1 states, "Please state the name, address and telephone number(s) for the individual(s) who had the power to hire and fire employees, including but not limited to Plaintiff, for the three--year time period preceding the filing of the Complaint.  Please describe the extent of such authority and explain whether more than one individual had to be involved in the process."  The Defendant simply answered, "Claude Dormoy, 26790 SW 137 Avenue, Homestead Florida...").  All of the other Interrogatories were phrased and responded to in a similar manner.

dispositive of the issue of whether the Plaintiff was an independent contractor or an employee.  The Interrogatories are drafted in a somewhat ambiguous manner, and thus the answers to the Interrogatories do not specifically ask nor directly answer the question of whether the Plaintiff was an employee of the Defendants. As such, the Interrogatories are not considered in the Court's analysis regarding the Plaintiff's status as an employee.  On the other hand, the Answers to the Interrogatories clearly provide a basis for finding that Claude Dormoy was the corporate officer of Moody Amoco who managed the employees of that entity.

### B.  Plaintiff as an Employee under FLSA

Plaintiff first seeks summary judgment on Moody Amoco's liability under the FLSA, as Plaintiff asserts that Mr. Berrocal was an employee of Moody who worked over forty hours a week and was not paid overtime.  In opposition to Plaintiff's Motion for Partial Summary Judgment, Defendants argue that the FLSA does not apply to Plaintiff because Ms. Berrocal worked as an independent contractor.   Neither party disputes that the FLSA does not apply to independent contractors. See *Murray v. Playmaker Servs. LLC*, 512 F. Supp. 2d 1273, 1276 (S.D. Fla. 2007).   Rather, the FLSA only applies to an "employee," which is defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). Because the FLSA is a remedial statute, courts apply an expansive definition of "employee." *Molina v. South Florida Express Bankserv. Inc.*, 420 F. Supp. 2d 1276 (M.D. Fla. 2006) (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 704 at 728 (1947); *W.J. Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308 at 1311 (5th Cir. 1976)); *see also Harrell v. Diamond A Entm't, Inc.*, 992 F. Supp. 1343, 1348 (M.D. Fla.1997).

The FLSA defines "employ" as "to suffer or permit to work," *Id.* at 203(g). Courts have held that "[a]n entity 'suffers or permits' an individual to work if, as a matter of economic reality, the individual is dependent on the entity." *Antenor v. D & S Farms*, 88 F.3d 925, 929 (11th Cir.1996) (citation omitted).  Thus, the touchstone of 'economic reality' in analyzing a possible employee/employer relationship for purposes of the FLSA is dependency." *Santelices v. Cable Wiring*, 147 F. Supp.  2d 1313, 1318 (S.D. Fla. 2001).

In applying this "economic reality" test, courts look to a number of factors to distinguish employees from independent contractors.  These factors include: (1) the nature and degree of control of the workers by the alleged employer; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree of permanence of the working relationship; and (6) whether the service rendered is an integral part of the alleged employer's business.  *Santelices*, 147 F. Supp. 2d at 1319.

"No one factor is controlling, nor is the list exhaustive .... The weight of each factor depends on the light it sheds on the putative employee's dependence on the alleged employer, which in turn depends on the facts of the case." *Id. See also Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947); *Freund v. Hi-Tech Satellite, Inc.*, 185 Fed. Appx. 782-83 (11th Cir. 2006).

The undersigned has applied the economic realities test to the facts at bar, and concludes that it is Plaintiff was an employee of Moody Amoco and not an independent contractor.

11

### (1) The nature and degree of control of Ms. Berrocal's work

As to the first factor, the nature and degree of control of the employee, "Control is only significant when it shows an individual exerts such a control over a meaningful part of the business that she stands as a separate economic entity." *Molina*, 420 F.Supp.2d, at 1285 (*quoting Usery*, 527 F.2d at 1312-13).  Thus, in evaluating this factor, courts have examined whether workers may choose how much and when to work, whether they may hire their own employees, whether they must wear uniforms, and how closely their work is monitored and controlled by the purported employer. *Id* at 1284-85.

In *Freund v. Hi-Tech Satellite, Inc*., 185 Fed.Appx. 782 (11th Cir. 2006), for example, the reviewing court affirmed the district court's finding that a plaintiff was an independent contractor and not an employee. *Id.* at 783.  There, the plaintiff  worked as a home satellite and entertainment systems installer whose day to day regulation of his work habits, work hours and work methods were determined by him. *Id*.

In this case, unlike the plaintiff in *Freund*, Ms. Berrocal's hours were set by Moody Amoco.  Specifically, in his deposition, Mr. Dormoy testified that he informed Ms. Berrocal when he hired her that she would have to serve lunch between 11:00 a.m. and 4:00 p.m., six days a week.  Defendant Moody argues that Ms. Berrocal had control over her hours since she determined when she came in based upon her assessment of the amount of time needed to prepare food by 11:00 a.m.  However, when questioned at his deposition about Plaintiff's work hours, Mr. Dormoy stated, "She was hired to work, to serve lunch from 11:00 a.m. to 4:00 p.m. So she had to go there earlier.  She would get there about 8, 8:30 every day" [D.E. 38-2 at 16].

Further, during the deposition, the following exchange  occurred between Mr. Dormoy and counsel for the Plaintiff:

Q:      Do you recall what [Plaintiff's] pay rate was when she began working?

A:      It was based on 7.50 an hour.  Eight-hour shift will be $60 a day.  That was the remuneration, $60 a day.

Q:      I'm sorry.  I'm confused.  Was it 7.50 or $60 a day?

A:      It's 7.50 times eight.

Q:      Okay.

A;      So that's $60.

[D.E. 38-2, page 18].  Thus, according to Mr. Dormoy, Ms. Berrocal was paid by Mr. Dormoy at an hourly rate for eight hours a day.  While the way Ms. Berrocal was compensated does not resolve the issue of whether she was an independent contractor, Ms. Berrocal's pay was based on an eight-hour shift like the employees of the gas station, and there is no evidence that she was able to come and go as she pleased.  Indeed, the uncontroverted evidence establishes that she was required to serve lunch during the hours set by Mr. Dormoy, and Ms. Berrocal could not adjust the hours or days that she sold food at the gas station.  Although Mr. Dormoy testified that he didn't keep records of her time, he stated that he would be there when she arrived and would see when she came in, and further testified that she always left at 4:00, because after the lunch service she would not have to clean up the cafeteria area before she left.

Moreover, the undersigned notes that unlike many cases where an independent contractor works outside of the purported employer's office or even from their own home,

13

there is no question that Ms. Berrocal's work was entirely performed on the Defendants' premises. (Compare to *Murray v. Playmaker Services, LLC*., 512 F. Supp. 2d 1273 (S.D. Fla. 2007) (finding worker independent contractor where *inter alia*, she conducted her business activities from her home and decided where to meet clients)).

In addition, there is no evidence that Ms. Berrocal was able to hire additional employees if she was in need of additional help,   Instead, Mr. Dormoy testified that Ms. Berrocal would cover as a cashier in the gas station for a Moody Amoco employee when the employee working the register had to go to the back to assist with the deliveries of the food for the cafeteria.

On the other hand, the evidence also establishes that Ms. Berrocal could set the menu of the food she served and order her supplies from the vendors of her choice. However, even in factual situations where the purported employer does not oversee the actual preparation of the food or service, courts have still not found this fact dispositive of whether a worker is an independent contractor.  See *Dole v. Snell*, 875 F.2d 802, 806 (10th Cir. 1989) (reversing district court's determination that workers were independent contractors rather than employees where workers were cake decorators who selected their own design for the cakes and prepared the cakes solely upon their own skill and desire).

Also, there is no evidence that Ms. Berrocal had to wear a uniform at work.  However, there is no evidence that any of the employees at the gas station wore uniforms, thus this fact holds negligible weight in the court's analysis.

Thus, overall the Plaintiff did not exert such a control over a meaningful part of the business that she stood as a separate economic entity, but rather had much of her working

14

conditions controlled by Moody Amoco.

(2) Ms. Berrocal's opportunity for profit or loss

It is uncontested in this matter that Ms. Berrocal was paid $60.00 a week without regard to any profit or loss that the cafeteria or gas station made. There was no opportunity for Ms. Berrocal to share in the profits that the cafeteria may have made. [D.E. 38-2 at 291]. To the contrary, Mr. Dormoy testified that it was Moody Petroleum who received the money from the food sales that Ms. Berrocal made, and that she did not receive any percentage of the sales profit.   He further stated that she had "to serve and make profit in the fast food."

Thus, it is clear that this factor weighs in favor of Ms. Berrocal as an employee rather than an independent contractor.

(3) Ms. Berrocal's investment in equipment or materials required for her task, or her employment of helpers

Ms. Berrocal did not invest in equipment or materials required to run the cafeteria. Rather, according to Mr. Dormoy, Ms. Berrocal would order the supplies and the "restaurant paid for the supplies." [DE. 38-2 at 291].  Further, as discussed above, Ms. Berrocal did not hire any helpers to run the cafeteria.  There is no evidence in the record that Ms. Berrocal brought any of her own equipment to the job, or that she exercised control over any specialized equipment or materials used in the cafeteria outside of her job at Moody.   This factor thus also weighs in favor of Ms. Berrocal being an employee.

(4) Whether the services rendered requires a special skill

It is undisputed that Ms. Berrocal prepared the food for the cafeteria.   Thus, the question is whether the preparation of that food required a special skill as that phrase is contemplated under the FLSA.  In *Santelices v. Cable Wiring*, for example, the court noted

15

that the plaintiff's job as a cable installer, which is considered a skilled trade,  required that he have a special skill to properly install digital cable, including burying cable lines underground, and installing converter boxes.  *Id*. at 1320.  The court further noted that the plaintiff was required to pass a written exam, attend a digital installation training class  and physically demonstrate his proficiency at digital cable installations. *Id*.

In this case, there is no evidence in the record that Ms. Berrocal had any special culinary training or even short order cook training prior to being hired for the position. Rather, according to Mr. Dormoy, after he decided that he was going to take over the food service at the Moody Amoco, Ms. Berrocal, who worked at another of Mr. Dormoy's businesses, heard about the position, asked Mr. Dormoy for the position, stated to him "Yes I can do it" and she was hired. [D.E. 38-2 at 151].   Further, Mr. Dormoy testified that the cafeteria served "fast food" which he described as lunch with different plates including, meat, chicken and soup.   Thus, it appears as though the type of food that Ms. Berrocal served in the cafeteria  was relatively simple and did not require expertise or special training like that typically considered for an independent contractor.   However, there is little evidence in the record regarding this factor, and since all inferences must be drawn in favor of the Defendants, the court will infer that it takes some skill to run a cafeteria.  Based upon this inference, this factor weighs slightly in favor of the Defendants.

(5) <u>The degree of permanence of the working relationship</u>

By all accounts, Ms. Berrocal worked for the Defendant for, at least, over four years. Thus, Ms. Berrocal maintained a relatively longtime relationship with the Defendants.   Also, the evidence establishes that there was no set time frame for her job to terminate, nor would

she have to renew any agreement regarding her employment on a periodic basis–she was simply hired to run the cafeteria.  On the other hand, Mr. Dormoy testified that he told Ms. Berrocal that if the fast food was losing money, that he "would close it down." While this factor may weigh in favor of finding that Ms. Berrocal was not an employee akin to the cashiers, the undersigned notes that when Mr. Dormoy was asked at his deposition why Ms. Berrocal stopped working for Moody Petroleum, he stated that it was for "different reasons", including "losing money in the fast food" and the fact that she got into an argument with one the cashiers and "between the two, she had to go."    This statement coupled with the length of time that Ms. Berrocal worked for the Defendants suggests that Ms. Berrocal's association with the Defendants was not limited to her work in the cafeteria but rather carried an additional sense of permanency beyond that work.  As such, under these facts, the undersigned finds that this factor also weighs in favor of Ms. Berrocal's status as an employee.

### (6) <u>Whether the services rendered were an integral part of the alleged employer's business</u>

Defendants argue that this factor weighs in favor of finding that the Plaintiff was an independent contractor as the cafeteria was not an integral part of Moody Amoco since the gas station was in the business of selling gas and not food.  This argument is without merit. First, Mr. Dormoy testified that the Moody Amoco contained a store inside as well as the cafeteria where Ms. Berrocal worked.  Thus, the business did not only sell gas but generated revenue from the sale of other items as well.  In addition, the testimony is clear that Mr. Domroy expected the cafeteria to make a profit only for Moody Amoco.  Thus, this is not a situation where the Plaintiff rented a space from the Defendants and retained the

17

profits, or where the Plaintiff provided some non-revenue generating service for Moody Amoco, such as watering decorative plants.  Rather, Mr. Dormoy made clear that he intended to run the "fast food" operations at Moody Amoco and the purpose was to generate profits for Moody Amoco.

Thus, based on the foregoing analysis, the undersigned finds that considering all of the facts in this case, the economic reality is that Ms. Berrocal was sufficiently economically dependant upon the Defendant Moody Amoco to qualify her as an employee under the FLSA rather than an independent contractor.

The cases cited by the Defendants do not alter this analysis.  For example, at oral argument, the Defendants placed heavy reliance on *Martin v. NITV, LLC*, 2007 U.S. Dist. LEXIS 38621 (S.D. Fla., May 29, 2007), where the Court  found that the employer-defendant was not liable under the FLSA for failure to pay overtime to the plaintiff because the plaintiff was not an employee but was an independent contractor.   However, that case is easily distinguishable from the case at bar.  In that case, the defendant was a vendor of a device similar to a polygraph machine.  The plaintiff was a retired police detective who worked for the defendant in training individuals on the proper operation of the device.  In determining that the plaintiff was an independent contractor, the Court applied the economics reality test, and placed significant emphasis on the fact that the plaintiff was issued a 1099 IRS form which is used for tax reporting for independent contractors.  In addition, the plaintiff identified himself as an independent contractor on his taxes and deducted significant business expenses from his taxes.   Further, the plaintiff signed an Instructor Agreement with the Defendant wherein he agreed that he was working as an independent contractor

18

and was highly qualified for the position due to many certifications and years of experience with the police department.  In addition, although the defendant had provided the plaintiff with the polygraph device, the plaintiff was free to use the machine for his own clients without any profit going to the defendant.

Similarly, in *Herr v. Heiman*, 75 F. 3d 1509 (10th Cir. 1996), the reviewing court vacated the trial court's determination that a plaintiff was an employee where a grain merchandiser brought suit against a grain corporation for FLSA violations.  Although the plaintiff was compensated on a commission basis and several key facts between the parties, including the level of skill required to be a grain merchandiser, the financial source of the instrumentalities and tools used in the merchandising, and the plaintiff's discretion in determining when and how long he worked, were in dispute, the district court found at the summary judgment stage that the plaintiff was an employee.  The reviewing court determined that because those facts remained in dispute that summary judgment was not appropriate.

In this case, the factual issues that precluded summary judgment in *Herr* are not at issue in this case.  Defendants do not deny that Ms. Berrocal was not paid a commission and there are no disputed facts regarding the financial source of the tools used in Ms. Berrocal's job.  Further, unlike the plaintiff in *Martin*, although the Defendants argue  that Ms. Berrocal set her own hours, the unequivocal testimony by Mr. Dormoy is Ms. Berrocal had to serve lunch six days a week from 11:00 am until 4:00 pm, at Mr. Dormoy's instruction and thus there is no dispute that Ms. Berrocal was not able to set her own hours.  Ms. Berrocal did not have an independent contractor agreement, and did not have the ability use

19

the materials from her job at Moody for outside income.  Accordingly, the cases cited by Defendants are factually distinct from the one at bar.

### C. <u>Number of Hours Plaintiff Worked</u>

Plaintiff also seeks summary judgment on the issue of whether Ms. Berrocal worked over forty hours a week for the Defendant Moody Berrocal, and specifically seek a determination that she worked forty eight hours a week.  However, there is a factual dispute as to the exact number of hours that the Plaintiff worked.  Specifically, Claude Dormoy testified that Plaintiff worked either from 8:00 or 8:30 am until 4:00, six days a week.  At oral argument, the Defendants argued that, drawing all inferences in favor of the Defendants, she was not required to work that number of hours, but only sufficient hours to permit lunch service to commence at 11:00 a.m.  It is undisputed that there were no time records kept. Thus, it is impossible for the undersigned to determine the exact number of hours for purposes of calculating overtime under the FLSA.  Therefore, this factual determination should be made by the fact finder in this case, and summary judgment on this issue is denied.

### D. <u>Individual Defendant's Liability</u>

Finally, Plaintiff seeks summary judgment on the issue of whether Claude Dormoy is individually liable for FLSA violations.  In order for Mr. Dormoy to be liable as well as the corporation, he must be an "employer" under the FLSA.  Under the FLSA, an employer is defined as any person acting directly or indirectly in the interest of an employer in relation to an employee.  29 U.S.C. § 203(d).  In *Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir. 1986), the Eleventh Circuit stated, "the overwhelming weight of authority is that a corporate officer

with operational control of a corporation's covered enterprise is an employer along with the corporation, [and is] jointly and severally liable under the FLSA for unpaid wages." *Id.*, *citing Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983).  In order to qualify as an employer for this purpose, an officer must either be involved in the day to day operation or have some direct responsibility for the supervision of the employee. *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F. 3d 1150 (11th Cir. 2008) (citations and quotations omitted).

In this case, the Defendants have not asserted that Mr. Dormoy would not be liable under this standard, but rather have argued that since Moody Petroleum is not liable under the FLSA because Plaintiff was not an employee but was an independent contractor, that Mr. Dormoy is therefore not liable.  At oral argument, the Defendants refused to expressly admit that Mr. Dormoy was liable as an employer if Moody Petroleum was liable, however counsel also stated that he would not argue against that determination.

Based upon the undisputed facts, the undersigned has determined that Mr. Dormoy is considered to be an employer of the Plaintiff, and therefore will be jointly liable with Moody Petroleum for any overtime wages that a jury determines are owed.  In particular, according to Mr. Dormoy's deposition, he was the President and fifty percent owner of Moody Petroleum during the relevant time frame.  Also, based upon his testimony as well as his Answers to Plaintiff's Interrogatories, it is clear that he exercised operational control of the corporation, including the hiring and firing of the employees, the supervision and control of the employees, determining the rate and method of payment for employees, and maintaining employment records for employees

and was the person responsible for ensuring that there were sufficient funds to make payroll.   He was also the person who determined that the Plaintiff would be fired.  Mr. Dormoy therefore qualifies as an employer under the FLSA and as such is jointly and severally liable with the Corporation for unpaid wages under the FLSA.

IV. <u>Conclusion</u>

For the above reasons, the undersigned concludes that Plaintiff Doris Berrocal was an employee and not an independent contractor of Defendants Moody Amoco and Claude Dormoy.  As such, the Plaintiff is entitled to the protections of the FLSA for any overtime hours for which she was not compensated.  In addition, Claude Dormoy is individually liable, jointly and severally with Moody Berrocal, for any violations of the FLSA.

Therefore, it is hereby

**ORDERED AND ADJUDGED** that  Plaintiff's Motion for Partial Summary Judgment against Defendants Moody Petroleum and Claude Dormoy is GRANTED, in part, as stated in the body of this Order.

**DONE AND ORDERED** in chambers in Miami, Florida, on February 22, 2009.

_Andrea M. Simonton_
**ANDREA M. SIMONTON**
 **UNITED STATES MAGISTRATE JUDGE**

Copies furnished to:
        All Counsel of Record via CM/ECF