**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.  07-22549-CIV-UNGARO/SIMONTON**
<u>CONSENT CASE</u>

**DORIS BERROCAL,**

      **Plaintiff,**

**v.**

**MOODY PETROLEUM, INC., et al.,**

      **Defendants.**

_____/

<u>**ORDER DENYING PLAINTIFF'S RULE 50 MOTION FOR**</u>
<u>**JUDGMENT AS A MATTER OF LAW**</u>

Presently pending before the Court is the Plaintiff's Rule 50 Motion for Judgment as a Matter of Law (DE # 66).  The Defendants responded (DE # 74) and the Plaintiff replied (DE # 77).  This case was referred to the undersigned Magistrate Judge based on the consent of the parties (DE # 26).  Based on a thorough review of the record, and for the reasons stated herein, the Plaintiff's Rule 50 Motion for Judgment as a Matter of Law is DENIED.

I.    <u>**BACKGROUND**</u>

Plaintiff Doris Berrocal initiated this action by filing a one-count Complaint against corporate Defendants Moody Petroleum, Inc., Dorcla, Inc., and individual Defendant Claude Dormoy, seeking to recover money damages for unpaid overtime wages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., ("FLSA") (DE # 1).  In the Complaint, the Plaintiff alleged that both corporate Defendants, Moody Petroleum, Inc. ("Moody") and Dorcla, Inc., ("Dorcla"), are gas station businesses that are owned and controlled by individual Defendant Claude Dormoy.  The Plaintiff further alleged that she was employed

by both companies as a gas station attendant/cashier from between "2000-2001" through September 15, 2007 at a rate of $7.50 an hour.  The Plaintiff alleged that she worked an average of 84 hours a week but was not paid overtime for work in excess of forty hours per week and also alleged that the Defendants knew and/or showed reckless disregard of the FLSA provisions concerning the payment of overtime wages to her and other similarly-situated employees.  The Plaintiff sought compensatory damages for unpaid overtime and liquidated damages from all of the Defendants, jointly and severally.

All three of the Defendants filed individual Answers to the Plaintiff's Complaint asserting, *inter alia*, that the Plaintiff was an exempt employee under the FLSA.  Defendant Moody also asserted that Moody Petroleum was not Plaintiff's employer (DE ##s 9,10, 30).

Prior to trial, the Court granted the Plaintiff's Motion for Partial Summary Judgment (DE # 38) and determined that the Plaintiff was an employee, not an independent contractor, when she worked at Moody Amoco, and that Defendant Claude Dormoy was the Plaintiff's employer at that station (DE # 53).[1]  The Court also concluded that Defendant Claude Dormoy was individually liable, jointly and severally with Moody, for any FLSA violations.

II.    TRIAL PROCEEDINGS

One of the central issues at trial was whether the two Defendant Corporations were joint employers of the Plaintiff, such that the hours worked by the Plaintiff at each business should be aggregated for the purpose of determining the number of overtime hours worked

---

[1]  In the Motion for Partial Summary Judgment, Plaintiff conceded that the issue of whether the other corporate entity, Dorcla, Inc., was a joint employer was an issue not appropriate for summary judgment and which had to be resolved at trial (DE # 38-2). Plaintiff similarly conceded that the issue of whether the FLSA violations were intentional had to be resolved at trial (DE # 38-9).

by the Plaintiff.  That issue is the focus of the presently pending motion.  As discussed in more detail below, in its simplest form, the issue presented is whether two corporations with overlapping ownership are joint employers as a matter of law where the overlapping owner is found to be individually liable as an employer under the FLSA with respect to an employee who performed work at both businesses.  The relevant evidence adduced at the trial is described below.

The evidence clearly established that the Plaintiff initially worked as a cashier/attendant at Defendant Dorcla's gas station, an Amoco BP gas station which was owned by Defendant Claude Dormoy.  She later began working at Defendant Moody's Amoco BP gas station primarily as the operator of a cafeteria.  Defendant Dormoy is the part owner of that business, together with his brother.

At trial, the Plaintiff first called Defendant Claude Dormoy to testify.  Mr. Dormoy testified on direct examination that he was the owner of Dorcla, Inc., (aka Eureka or South Dade Amoco), an Amoco BP gas station located in Miami, from sometime in 1994 through May 31, 2006.  He testified that he was also the part owner and president of Moody Petroleum, an Amoco BP gas station that he purchased in 2000, that remained in business at the time of the trial.  He further testified that he had owned a third gas station since 2002, Super Stop Inc.  Mr. Dormoy confirmed that he was the person who paid the employees at both Moody Petroleum and Dorcla, Inc.  However, Mr. Dormoy testified that it was Ms. Berrocal's husband, who was the manager at Dorcla, and not Mr. Dormoy, who hired employees at the Dorcla station, although Mr. Dormoy approved the hiring.   Mr. Dormoy was the person who initially hired Ms. Berrocal.  Mr. Dormoy was the person with the

authority to hire people at the Moody station.  Mr. Dormoy determined how much people were paid at both the Dorcla and Moody stations.

Mr. Dormoy testified that Ms. Berrocal worked at Dorcla and at Moody Petroleum and that he believed her to be an employee at Dorcla, but that he considered her to be an independent contractor when she worked at Moody.[2]  According to Mr. Dormoy, during the time that Ms. Berrocal worked at Dorcla, she also worked in the mornings at an Exxon station with which Mr. Dormoy was not affiliated.

He testified that Doris Berrocal was paid in cash and made $5.50 an hour when she first began working at Dorcla and made $7.50 an hour at the end of her employment at Dorcla.  According to Mr. Dormoy, Ms. Berrocal received the same rate of pay when she worked at Moody as she did when she worked at Dorcla, although he stated that she was paid a salary of $60.00 per day at Moody.  He recalled that Ms. Berrocal began working at Moody in 2003 in the cafeteria portion of that station.  Mr. Dormoy testified that prior to Ms. Berrocal working at Moody, he had a different company that was running the cafeteria which he described as a "franchise," and denied that the cook in the cafeteria was an employee at Moody.  However, Mr. Dormoy confirmed that the cafeteria inside the Moody gas station was owned by Moody and that if the cafeteria made a profit, then Moody made a profit.  In addition, Moody bought the supplies for the cafeteria.  Mr. Dormoy testified that he

---

[2]  In granting the Plaintiff's Motion for Partial Summary Judgment, the Court found that Ms. Berrocal was an employee and not an independent contractor when she worked at Moody.  However, at trial, Mr. Dormoy's testimony regarding his belief that the Plaintiff was an independent contractor when she worked at Moody was relevant to a determination of whether any violations of the FLSA were either willful or cloaked in good-faith.

considered Ms. Berrocal's employment at Moody to be separate from the employment at Dorcla, although at times, when Ms. Berrocal worked at Moody in the morning, she also worked the cash register in that station.

On cross-examination, conducted by counsel for the Defendants in the Plaintiff's case-in-chief, Mr. Dormoy testified that Moody Amoco was owned by Moody Petroleum, Inc. which was owned equally by Mr. Dormoy and his brother. He also testified that Moody Petroleum and Dorcla were two different corporations which each operated its own gas station, and that they did not combine or work together to jointly service the public.

In addition, as to the Plaintiff's working conditions, Mr. Dormoy testified that Ms. Berrocal wore a uniform when she worked at the South Dade Amoco (Dorcla) station but did not wear a uniform at the Moody station. Mr. Dormoy testified that Ms. Berrocal was "let go" from her position at Moody because the cafeteria was losing money and because Ms. Berrocal had an argument with the manager at Moody.

The Plaintiff also presented the testimony of Doris Berrocal and Luis Lima in her case. Doris Berrocal confirmed that she worked at the both the Dorcla and Moody gas stations, although she did not begin working at the Moody gas station after she stopped working at an Exxon station that was not owned by Mr. Dormoy. Ms. Berrocal testified that she received the same rate of pay at both stations and also that at times she was asked to bring various items from Moody to Dorcla, including quarters, syrup for the soda dispensers and cigarettes, printer paper and lottery tickets.

In addition, Plaintiff read excerpts of Claude Dormoy's deposition into the record. Finally, Plaintiff submitted Claude Dormoy's Answers to Interrogatories into evidence at

trial.  In those Answers, Claude Dormoy was identified as the person who had the power to hire and fire employees, supervise and control employees, determine the rate and method of payment for employees, maintain employment records for employees; and, was the person responsible for ensuring that there were sufficient funds to make payroll.

At the close of the Plaintiff's case, the Defendants moved for judgment as a matter of law on the issue of joint employment, the statute of limitations and liquidated damages (DE # 63).  That motion was denied by the Court.

In their case in chief, the Defendants only read the deposition of Doris Berrocal into the record.  After the Defendants rested, the Plaintiff moved for judgment as a matter of law asserting, among other things, that the uncontroverted facts established that Dorcla and Moody had functioned as joint employers of the Plaintiff.  The Court denied the motion.

At the jury charging conference, the Plaintiff objected to the Court giving the jury the Eleventh Circuit Pattern Jury Instruction 1.10.4.2 entitled "Miscellaneous Issues, Joint Employers."  The Court overruled the objection and gave the entire instruction to the jury along with the text of 29 C.F.R. § 791.2, a regulation issued by the Department of Labor which is entitled "Joint Employment."  The Court also gave the Eleventh Circuit Pattern Jury Instruction 1.7.1 for claims made pursuant to the FLSA, and as part of that instruction, included the  language: "...it has been established as a matter of law in this case that the Plaintiff was employed by the corporate Defendants MOODY PETROLEUM, INC., and DORCLA, INC." (DE # 66-3 at 8).  The Court also included an instruction entitled, "Liability of Individual Employer" which, among other things stated, "...it has been determined that Defendant DORMOY was an employer of the Plaintiff with respect to the work performed for

6

MOODY PETROLEUM, INC.  Thus, the only fact for you to determine is whether Defendant DORMOY was an employer with respect to the work performed for DORCLA, INC." (DE # 66-3 at 15).

The Court recognized that the joint employer issue was a close question, however, and, therefore, the jury was also required to answer questions regarding the number of hours for which compensation was owed if the hours the Plaintiff worked at Moody and Dorcla were combined.

Following the three-day jury trial, the jury found that the Plaintiff was entitled to overtime payments stemming from her work at Moody and that Defendant Claude P. Dormoy was her employer with respect to her work at Dorcla (DE # 62)  However, the jury also found that Moody and Dorcla were not the Plaintiff's joint employers (DE # 62 at 1).  The jury further found that the Defendants were not willful in their violations of the FLSA.[3]

The Plaintiff then filed the instant Motion for Judgment as a Matter of Law claiming that the Jury erred for various reasons when it found that Moody and Dorcla were not her joint employers (DE # 66).[4]

---

[3]  Specifically, the Verdict Form indicated that the jury found that the Plaintiff proved by a preponderance of the evidence that she worked 704 hours of overtime for the Defendant Moody Petroleum, Inc., between September 28, 2005 and September 15, 2007 and that Defendant Claude Dormay was her employer with respect to the work she performed for Defendant Dorcla, Inc. (DE # 62).  The jury also found, however, that the Plaintiff 1) did not prove by the preponderance of the evidence that Moody Petroleum, Inc., and Dorcla Inc. were the Plaintiff's joint employer and 2) did not prove that the Defendants either knew or showed reckless disregard for the matter of whether their conduct as to the Plaintiff was prohibited by the FLSA (DE # 62).

[4]  It is significant if Dorcla and Moody are determined to be Plaintiff's joint employers because pursuant to 29 C.F.R. § 791.2(a), all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the

### III.   THE PARTIES' CLAIMS

The Plaintiff asserts that she is entitled to a Judgment as a Matter of Law pursuant to Fed.R.Civ.P. 50 regarding the jury's determination that Defendants Moody and Dorcla were not the Plaintiff's joint employers (DE # 66).[5]  The Plaintiff contends that the Court's joint employer jury instruction was erroneous and that it misled and confused the jury.  In addition, the Plaintiff argues that the jury's verdict is inconsistent because although the jury was instructed that Defendant Claude Dormoy was the Plaintiff's employer at Defendant Moody, and the jury found that Defendant Claude Dormoy was the Plaintiff's employer at Defendant Dorcla, the jury nevertheless concluded that Defendants Dorcla and Moody were not the Plaintiff's joint employers.  In addition, the Plaintiff argues that she is entitled to damages consistent with a finding that the Defendants were the joint employers of the Plaintiff.  Finally, the Plaintiff asserts that she is entitled to liquidated damages because, notwithstanding the jury's finding that the Defendants' FLSA violations at Moody were not willful, the Defendant failed to demonstrate that it acted in good-faith when the FLSA violations were committed.

---

Act.  Thus, the Plaintiff's hours worked in one week for the joint employers would be aggregated in order to determine overtime requirements.

[5]  In the Motion, the Plaintiff states that even if the Court rules in the Plaintiff's favor on the motion for judgment as a matter of law, that a new trial is not necessary because the jury determined the number of hours the Plaintiff worked in the event it was determined that she was jointly employed.  On the Verdict Form, the jury found that between September 28, 2005 and September 15, 2007 that Plaintiff received no pay for 640 hours of overtime work and was paid at her regular rate for 3200 hours of overtime, if the hours for Plaintiff's work at Dorcla were combined with the hours she worked at Moody Petroleum (DE # 62 at 2).  The jury was required to answer this question in order to avoid a retrial in the event that a determination was made as a matter of law that Dorcla and Moody were joint employers, despite a contrary finding by the jury.

8

In opposition, the Defendants contend that there was no evidence adduced at trial to support a finding that Defendants Moody and Dorcla met the joint employer test, other than the fact that Defendant Clause Dormoy had an ownership interest in both corporate employers.[6]

IV.    **LAW & ANALYSIS**

A.    **Judgment as a Matter of Law Pursuant to Rule 50**

Motions for Judgment as a Matter of Law in a jury trial are governed by Fed.R.Civ. P. 50.  Pursuant to that Rule, a court may grant a motion for judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."  *Akouri v. State of Florida Dept. of Transp.*, 408 F.3d 1338, 1343 (11th Cir.2005) *citing* Fed.R.Civ.P. 50(a).  In deciding a Rule 50 motion, a court should review all of the evidence in the record, draw all reasonable inferences in favor of the non-moving party, and disregard all evidence favorable to the moving party that the jury is not required to believe.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000). Credence should also be given to "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses."  *Id.* (internal quotations omitted). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  *Id.* at 150.

---

[6]  The Plaintiff has contemporaneously filed a Motion to Liquidate Damages (DE # 69). Defendant has filed a memorandum in opposition to the motion (DE # 70).  Thus, Defendant did not submit an opposition to the Plaintiff's request for liquidated damages presented in Plaintiff's Rule 50 Motion.

Moreover, the Eleventh Circuit has a well established standard governing motions for judgment as a matter of law and has stated,

> If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.... [I]t is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.

*Lipphardt v. Durango Steakhouse of Brandon, Inc.,* 267 F. 3d 1183 (11th Cir. 2001) *citing Watts v. Great Atl. & Pac. Tea Co.*, 842 F.2d 307, 309-10 (11th Cir. 1988) (*per curiam*) (*citation omitted*).

      **B.**    <u>Sufficiency of Evidence on Joint Employer Verdict</u>

In her Motion, the Plaintiff contends that joint employment was established as a matter of law at trial, and, therefore, the jury should have found that Defendants Dorcla and Moody were the Plaintiff's joint employers.[7]  However, the evidence at trial was insufficient for this Court to determine, as a matter of law, that the Defendants were the Plaintiff's joint employer.

The Eleventh Circuit's Pattern Jury Instruction on Joint Employers sets forth an "economic realities" test which is typically used to determine whether two entities are joint

---

[7]  It is somewhat unclear whether the Plaintiff is asserting that the jury's finding on this issue was incorrect because of an inappropriate jury instruction or rather, only that the Court should find as a matter of law that joint employment was established through the evidence at trial.

employers of a worker under the FLSA.  The "economic realities" test in that instruction examines the following factors: (1) the nature and degree of control of the employee, and who exercises that control; (2) the degree of supervision, direct or indirect, of the employee's work, and who exercises that supervision; (3) who exercises the power to determine the employee's pay rate or method of payment; (4) who has the right, directly or indirectly, to hire, fire, or modify the employment conditions of the employee; (5) who is responsible for the preparation of the payroll and the payment of wages; (6) who made the investment in equipment and facilities used by the employee; (7) who has the opportunity for profit and loss; (8) the permanency and exclusivity of the employment; (9) the degree of skill required to do the job; (10) the ownership of the property or facilities where the employee works; and (11) the performance of a speciality job within the production line integral to the business.  Eleventh Circuit, Pattern Jury Instruction 1.10.4.2.[8]  The Instruction further provides, "Consideration of all of the circumstances surrounding the work relationship is essential, and no one factor is determinative."

In addition, the Department of Labor's general standards for finding whether a joint employment situation exists are listed in 29 C.F.R. § 791.2.[9]  That regulation provides, in

---

[8]  The economic realities test set forth in the pattern instruction is derived from *Aimable v. Long & Scott Farms, Inc.*, 20 F.3d 434, 438-39 (11th Cir. 1994).  *See also*, *Antenor v. D & S Farms*, 88 F.3d 925, 932 (11th Cir. 1996).

[9]  "This court accords...significant weight to the statutory interpretation of the executive agency charged with implementing the statute being construed, particularly where, as here, that interpretation is incorporated in a formally published regulation." *Gonzalez-Sanchez v. Int'l Paper Co.*, 346 F.3d 1017, 1021 n. 4 (11th Cir. 2003) *citing Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984); *Caro-Galvan v. Curtis Richardson, Inc.*, 993 F.2d 1500, 1507 (11th Cir.1993).

11

relevant part:

>. . . (b) Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers during the workweek, a joint employment relation generally will be considered to exist in situations such as:

>>(1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or

>>(2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or

>>(3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 791.2(b)(1)-(3).

At the outset, the Court notes that under the Plaintiff's theory of this case, in order to find that the Defendants Moody and Dorcla were her joint employers as a matter of law, the Court would have to conclude that  there was no legally sufficient evidentiary basis for a reasonable jury to find that the employers did not meet one of the scenarios set forth in 29 C.F.R. § 791.2(b)(3).[10]  In other words, the Plaintiff asserts that this Court must find that Dorcla and Moody "[we]re not completely disassociated with respect to the employment of [Doris Berrocal] and...shared control of the employee, directly or indirectly, by reason of the

---

[10]  While the Court's analysis only deals specifically with subsection (3) of the relevant C.F.R. because of Plaintiff's argument, the Court's ultimate conclusion regarding the jury's finding on the joint employer issue would not change even if these facts were analyzed under sections (1) or (2) of that Regulation.

fact that one employer controls, is controlled by, or is under common control with the other employer."

Although the Eleventh Circuit has not addressed the issue presented in the case at bar, the Plaintiff cites to several cases from other Circuits and District Courts to support her position.  However, the cases cited by the Plaintiff, where courts have found as a matter of law that two separate corporations operated as joint employers, typically involved far greater intermingling of the operations of the corporations than the evidence adduced in the case at bar.

In *Chao v. A-One Medical Services, Inc.*, 346 F.3d 908 (9th Cir. 2003), for example, the reviewing court examined the working relationship between two separate corporations, A-One Medical Services and Alternative Rehabilitation Home Healthcare, Inc., in order to determine whether they were joint employers of in-home health services employees for purposes of the FLSA.  Although there was some degree of separation between the two corporations, e.g., no agreement to share employees, separate paychecks for the employees from each company, the Court opined that the corporations had substantially merged their operations by: 1) transferring employees between companies in order to maintain continuity of care for A-One's patient-clients, 2) transferring A-One's patient-clients to Alternative; 3) allowing one corporation to assist the other in the supervision of the clients and staff of the other; 4) allowing one corporation to oversee the patient care of the other; 5) allowing one company to answer telephones for the other corporation; 6) sharing a receptionist,  who was an employee of only A-One, between the companies; 7) sharing an office; and 8) sharing one scheduler for both corporations. *Id.*  The Court thus described the companies'

13

operations as "closely coordinated." *Id*.  The Court also noted that there was "relatively fluid movement of employees between the two companies." *Id*. at 913.  Further, the Court noted in its analysis of the joint employer issue that the owner of A-One, who ultimately purchased Alternative, oversaw the work being done for Alternative's clients and also managed Alternative's employees through his other corporation.  Also, the same nursing supervisor and schedulers were in charge of employees while those employees worked for either company.

Similarly, in *Chao v. Barbeque Ventures*, LLC, 2007 WL 5971772 (D. Neb. Dec. 12, 2007), the district court granted a plaintiff's motion for summary judgment on the issue of whether the  FLSA claimants were jointly employed by more than one restaurant in a chain of  restaurants.[11]  The restaurants were owned by a single owner and five of the restaurants were overseen by a single area director.  Therefore, in *Venture Barbeque*, there was a far greater coordination of operations and "fluid movement of employees" than in the case sub judice.

Further, the other cases cited by the Plaintiff are distinguishable from the instant case because they either involved a vertical employment scenario or the employees engaged in work that simultaneously benefitted two employers; neither of which occurred in the case at bar.  In *Bonnette v. California Health and Welfare Agency*, 704 F.2d. 1465 (9th Cir. 1983), which arguably involved a vertical employment scenario, "chore workers"

---

[11]  The Court notes that the standard for summary judgment pursuant to Civil Rule of Procedure 56 mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

asserted that the public social service agencies who paired the workers with disabled clients were their employers where the social service agencies paid the workers' wages. Similarly, *Schultz v. Capital Int'l Security Inc.*, 466 F.3d 298 (4th Cir. 2006) involved employees who worked on a security detail which simultaneously benefitted both a security company and the client who hired the detail.  Finally, in *Zachary v. Rescare Oklahoma, Inc.*, 471 F. Supp. 2d 1175 (N.D. Okla. 2006), the court denied a defendant's motion for summary judgment where a parent corporation located in Kentucky argued that it was not the joint employer of the training specialists who worked in a subsidiary of the company located in Oklahoma.  Significantly, in *Zachary*, the Court relied, in part, on the fact that the parent corporation exercised general control over the subsidiary's employees.[12]

Moreover, the Court notes that in all of the cases wherein horizontal employment was established as a matter of law, the corporations at issue employed a person or persons, other than the owner, who as an employee of one or both of the corporations, oversaw, supervised or otherwise coordinated certain employees or employment conditions of the employees at both corporations.  For example, in *Davidson v. Orange Lake Country Club, Inc.*, 2008 WL 254136, at *4 (M.D. Fla. Jan. 29, 2008), the court declined to find there was no joint employer relationship as a matter of law, holding that genuine issues of fact remained

---

[12]  **Plaintiff also cites to *Santelices v. Cable Wiring*, 147 F. Supp. 2d 1313 (S.D. Fla. 2001) for support of its position that the same factors should be used to determine whether an entity is a joint employer and if an entity is personally liable.  However, in that case, the Court examined whether a cable installer demonstrated that he was employed by a vendor that held a contract with a cable company related to the cable installation, and applied the exact factors set forth in the Eleventh Circuit Pattern Jury Instruction on Joint Employers in its analysis.  Thus, the Court does not understand how the Plaintiff's reliance on the case advances the Plaintiff's position.**

regarding the joint employment issue where Plaintiff submitted a sworn statement that stated that there was no distinction between the managers and employees of both companies and that she was supervised by employees from both corporations even though she was only technically an employee for one of the companies.  *Id*.

In this case, although it is a close question whether Defendants Moody and Dorcla were joint employers of the Plaintiff for purposes of the FLSA, the testimony and evidence at trial was sufficient for a reasonable jury to find for the Defendants on this issue. Specifically, Mr. Dormoy testified that the gas stations at issue were owned by two different corporations, and that he was only a part owner of one of those corporations-*i.e.*, Moody. Mr. Dormoy further testified that Moody and Dorcla did not combine or work together to jointly service the public.  The Plaintiff did not rebut these assertions.  Moreover, there was little to no evidence at trial that the operations of Moody and Dorcla were closely coordinated.  The Plaintiff, who bore the burden of proof on this issue, did not prove that Moody and Dormoy shared operations in the manner contemplated in any of the cases which the Plaintiff cited.  The Plaintiff did not demonstrate that Moody and Dorcla shared office space, merged operations, transferred or shared employees, used common funds, ordered merchandise in tandem, utilized the same procedures at each gas station or allowed employees from Moody or Dorcla to supervise the work of employees at the other gas station.  Rather, at the Dorcla station, Plaintiff's husband, a manager, was her supervisor and at Moody, Plaintiff  was supervised by a manager from that station.  Simply put, although Moody and Dorcla were both owned by Mr. Dormoy, and Mr. Dormoy had the final say regarding certain terms of employment with respect to both gas stations, the gas

16

stations functioned separately, with separate managers, in their respective control of Plaintiff's employment.[13]

The Court notes that Ms. Berrocal testified at trial that she would at times receive requests from Mr. Dormoy or his wife to bring items from Moody to Dorcla.  However, the Court does not view such requests, standing alone, as sufficient to convert the separate operations of Dorcla and Moody into a joint employer status.  Also, during his testimony, Mr. Dormoy could not recall that either he or his wife ever requested that Ms. Berrocal bring supplies or merchandise from Moody to Dorcla.  Thus, the testimony on this issue was disputed and any credibility determinations necessary to resolve the issue were appropriately left for the jury to resolve, rather than this Court in a motion for judgment as a matter of law.[14]

Finally, although not dispositive to the Court's determination on this issue, in the cases relied upon by the Plaintiff, there was no indication that the employees worked in different capacities, and in essence, held two different jobs in the various locations at which

---

[13]  The Defendants argue that the cases cited by the Plaintiff are distinguishable because they deal with facts under a common market approach or enterprise theory where the two alleged joint employers "worked together to obtain some type of market advantage." (DE # 74 at 5).  The Court finds no merit to this argument as there was no mention of any such conclusion in any of the cases related to the courts' joint employer analysis.  In addition, as correctly argued by the Plaintiff, and mentioned above, the enterprise inquiry under the FLSA is distinct from the joint employer inquiry.

[14]  The Plaintiff's credibility and motivations in her reasons for bringing the action were raised when Mr. Dormoy testified that Ms. Berrocal was "let go" from the Moody station after the cafeteria was not making money and she had an argument with the manager at Moody.  The testimony was also in dispute regarding whether the Plaintiff worked for a number of weeks covering shifts as a cashier at the Moody station and whether the person who ran the cafeteria at Moody prior to the Plaintiff was a separate company or a Moody employee.

they worked.  In contrast, in this case, the evidence demonstrates that Ms. Berrocal worked a different job, with different working conditions, at a different location that happened to be owned by an overlapping owner.  For example,  Mr. Dormoy testified that Ms. Berrocal worked as a cashier at the Dorcla location and in that position was paid hourly, was required to wear a uniform and worked on a shift in the same manner that the other cashiers worked in that location.  However, when Ms. Berrocal worked at the Moody gas station, she ran the food service cafeteria, did not wear a uniform and worked the hours necessary to serve lunch, as opposed to working as a shift cashier.

Therefore, the Court rejects the Plaintiff's argument and finds that the Plaintiff has not demonstrated that she is entitled to judgment as a matter of law in this matter because a reasonable jury could have determined under the facts presented at trial that Defendants Dorcla and Moody did not operate as the Plaintiff's joint employers.

C.    The Joint Employer Jury Instruction

The Plaintiff also contends that the Joint Employer Jury Instruction given by the Court in this case was improper.  A post-trial challenge to a jury instruction should be viewed in the context of the entire charge, the allegations of the complaint, the evidence presented, and the arguments of counsel, to determine whether the jury was misled and whether the jury understood the issues.  *National Distillers and Chemical Corp. v. Brad's Machine Products, Inc.*, 666 F.2d 492, 497 (11th Cir. 1982) (quoting *First Virginia Bankshares v. Benson*, 559 F.2d 1307, 1316 (5th Cir. 1977)); *U.S. v. Johnson*, 139 F.3d 1359, 1366 (11th Cir. 1998).  Courts generally assume, absent evidence to the contrary, that jurors carefully follow the court's jury instructions.  *Id.*, *citing Francis v. Franklin*, 471 U.S. 307, 324 (1985).

A court may grant a request for a new trial where the instructions do not accurately reflect the law, and the instructions as a whole do not correctly instruct the jury. *Id.*, *citing Carter v. DecisionOne Corp. Through C.T. Corp. Sys.*, 122 F.3d 997, 1005 (11th Cir. 1997) (citation omitted). However, where a jury instruction is incorrect, the appropriate remedy in a case is a new trial rather than a judgment as a matter of law. *Goodgame v. Am. Cast Iron Pipe Co.*, 75 F.3d 1516, 1521 (11th Cir. 1996) (citations omitted).

In this case, the Plaintiff has stated that she does not seek a new trial due to the incorrect jury instruction but rather seeks judgment as a matter of law. However, the Plaintiff is not entitled to the relief she seeks for the purported incorrect jury instruction because the Eleventh Circuit has made clear that the proper remedy is a new trial and not judgment as a matter of law. Moreover, for the following reasons, the Plaintiff's argument regarding the jury instruction is without merit.[15]

As stated above, the Court provided the jury with an instruction that incorporated both the Eleventh Circuit Pattern Instruction and 29 C.F.R. § 791.2. Specifically, the Court's jury instruction provided:

### Joint Employment

It is not always clear under the law whether a person is an  "employee" or not, or who the "employer" is.  Some people, for example, perform services for others while remaining self employed as independent contractors. Others are clearly "employees," but a question may arise as to who the employer is; and, in some instances, an employee may have joint employers, that is, more than one employer at the same time.  Plaintiff alleges that Defendants MOODY PETROLEUM, INC. and DORCLA, INC., were her joint employers.

---

[15]  The Court has also considered and rejected the contention that the jury instruction was incorrect in connection with the Plaintiff's argument that the Court should grant judgment as a matter of law and overturn the jury's verdict.

A single individual may stand in the relation of an employee to two or more employers at the same time under the Fair Labor Standards Act, since there is nothing in the Act which prevents an individual employed by one employer from also entering into an employment relationship with a different employer. A determination of whether the employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the Act depends upon all the facts in the particular case. If all the relevant facts establish that two or more employers are acting entirely independently of each other and are completely disassociated with respect to the employment of a particular employee, who during the same workweek performs work for more than one employer, each employer may disregard all work performed by the employee for the other employer (or employers) in determining his own responsibilities under the Act.  On the other hand, if the facts establish that the employee is employed jointly by two or more employers, i.e., that employment by one employer is not completely disassociated from employment by the other employer(s), all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the Act. In this event, all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the Act, including the overtime provisions, with respect to the entire employment for the particular workweek. In discharging the joint obligation each employer may, of course, take credit toward minimum wage and overtime requirements for all payments made to the employee by the other joint employer or employers.

Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:

(1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or

(2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or

(3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

You should resolve this question in light of the economic realities of the entire relationship between the parties, and should consider each of the

20

following factors to the extent you find that a particular factor is applicable to the case:

(1) the nature and degree of control of the employee, and who exercises that control; (2) the degree of supervision, direct or indirect of the employee's work, and who exercises that supervision; (3) who exercises the power to determine the employee's pay rate or method of payment; (4) who has the right, directly or indirectly, to hire, fire, or modify the employment conditions of the employee; (5) who is responsible for the preparation of the payroll and the payment of wages; (6) who made the investment in equipment and facilities used by the employee; (7) who has the opportunity for profit and loss; (8) the permanency and exclusivity of the employment; (9) the degree of skill required to do the job; (10) the ownership of the property or facilities where the employee works; and (11) the performance of a specialty job within the production line integral to the business.

Consideration of all of the circumstances surrounding the work relationship is essential, and no one factor is determinative. Nevertheless, the extent of the right to control the means and manner of the worker's performance is the most important factor.

If the facts establish that the employee is employed jointly by two or more employers, all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the Act.  A joint employment relationship generally will be considered to exist in situations such as where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

(DE # 66-2).

The Plaintiff first argues that the jury instruction should not have required the jury to find that the Plaintiff's work provided a simultaneous benefit to both employers.  In support of this argument, the Plaintiff quotes a portion of the joint employer instruction and asserts that the instruction required the jury to find that the employee's work "simultaneously benefits two or more employers."  However, the Plaintiff misreads the jury instruction and fails to quote the entire relevant portion of that instruction.  Indeed, the

21

Court's jury instruction tracks the language of 29 C.F.R. § 791.2 (b) verbatim, and provides, in pertinent part, "Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers during the workweek, a joint employment relationship generally will be considered to exist in situations such as.....". Thus, nowhere does the instruction require a fact finder to determine that the employee's work simultaneously benefitted two or more employees. Rather, the connector "or" that is included in the entire passage, allows the fact finder to consider that a joint employer relationship may also exists if the employee works for two or more employers during the workweek, which the Plaintiff has asserted was the factual scenario in the case at bar.

The holding in *Wirtz v. Herbert*, 368 F. 2d 139 (5th Cir. 1966), which Plaintiff cites to in support of this argument, is wholly consistent with the above analysis. First, in *Wirtz*, the District Court entered a decision in favor of the employer defendant finding that the facts of the case did not establish joint employment, in part because the employee did not engage in simultaneous performance of its duties for both employers. *Id*. at 141. In reversing the District Court's decision, the Fifth Circuit Court of Appeals noted that the concept of joint employment was not limited to those cases where an employee performed work concurrently for two employers. *Id.* However, as stated above, the jury instruction that the Plaintiff complains of does not require such a finding, nor is there any evidence that the jury arrived at its verdict based upon its belief that the Plaintiff had to provide work that simultaneously benefitted both Defendants Moody and Dorcla in order for joint employment under the FLSA to be established. Second, in *Wirtz*, the District Court did not rely on 29 C.F.R. § 791.2 in determining that joint employment had not been established. Rather, it was

22

the Secretary of Labor who urged the reviewing Court to seek guidance from that section in determining whether joint employment existed in that case, although the reviewing Court declined to do so.  Thus, *Wirtz* is distinguishable from the case at bar, and does not assist the Plaintiff in demonstrating that the joint employer jury instruction improperly required the jury to find that the Plaintiff performed work for the simultaneous benefit of two employers.

The Plaintiff next asserts that because the evidence clearly demonstrated that Ms. Berrocal was jointly employed by Moody and Dorcla in a "horizontal" employment setting, the Court erred in giving the Eleventh Circuit Pattern instruction on Joint Employers which only applies to the "vertical" employment setting.[16]  In addition, the Plaintiff contends that the Court also erred in including the entirety of 29 C.F.R. § 791.2, which sets forth three types of joint employment scenarios, because according to the Plaintiff, the first two scenarios also only apply to the "vertical" employment situations rather than the "horizontal" situation in the instant case.

For support of her position, the Plaintiff cites to various cases that distinguish between horizontal and vertical employment including *Davidson v. Orange Lake Country Club, Inc.*, 2008 WL 254136 (M.D. Fla. Jan.  29, 2008) and *Chao v. A-One Medical Services,*

---

[16]  Courts have described "horizontal" joint employment cases as involving situations in which two or more related or overlapping entities employ a worker. "Vertical" joint employment cases, on the other hand, involve situations in which an employer hires laborers through a third party labor contractor.  *Davidson v. Orange Lake Country Club, Inc.*, 2008 WL 254136, at *3 (M.D. Fla. 2008), *clarified on denial of reconsideration*, 2008 WL 596120 (M.D. Fla. 2008) (internal quotation marks and citations omitted), *citing Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 917 (9th Cir. 2003).

*Inc.*, 346 F. 3d 908, 917 (9th Cir. 2003).  While the Plaintiff is correct that those cases explain the difference between horizontal and vertical employment, they do not hold or imply that it is an error for a court to give the "economic realities" pattern jury instruction on joint employment in a horizontal employment scenario.  In fact, in ruling on the Defendant's Motion for Reconsideration on the denial of its summary judgment motion, the Court in *Davidson*, applied the standard contained in 29 C.F.R. § 791.2, but noted that the reality factors from *Antenor* and *Aimable*, which are set forth in the Eleventh Circuit Pattern jury instruction, were not irrelevant to the Court's horizontal joint employment analysis. *Davidson v. Orange Lake Country Club, Inc.*, 2008 WL 596102 at * 3 (M.D. Fla. Feb. 28, 2008).

Further, leaving aside for the purposes of this argument whether the facts support a finding that the Plaintiff was jointly employed by Defendants Dorcla and Moody, the portion of the jury instruction taken from the C.F.R. was neither confusing nor misleading. Much like the language used in the a simultaneous benefit portion of that Regulation as discussed previously, the three scenarios presented under 29 C.F.R. § 791.2 clearly provide that any one of the three scenarios might be present, as evidenced by the use of the word "or" after the first and second scenario.  Thus, the plain and logical reading of the regulation, which was included verbatim in the jury instructions, is that a joint employment relationship may exist if the factual situation in (1) is present, *or,* the factual situation in (2) is present, *or*, if the factual scenario in (3) is present.  There is no reason to assume that the jury misread the instruction or incorrectly believed that the absence of the factual scenario in described in subsections (1) or (2) would preclude a finding that a joint employment relationship existed pursuant to subsection (3).

Moreover, the Court disagrees with the Plaintiff's assessment that the first two scenarios described under the Regulation cannot, as a matter of law, apply to a horizontal employment scenario.  Both the first scenario, which describes an arrangement between employers to share an employee's services, and the second scenario, which describes an employer acting in the interest or another, could occur even where an employee worked directly for two employers who were not in a vertical relationship with one another.  There is nothing in the regulation to suggest otherwise, and even the cases that have distinguished between vertical and horizontal employment situations have not concluded that the first two scenarios under the regulation are necessarily inapplicable to a horizontal employment situation.  *See Chao v. Barbeque Ventures*, LLC., 2007 WL 5971772 (D. Neb. Dec. 12, 2007)) (setting forth entire regulation in its analysis of horizontal employment scenario, but finding facts most closely approximated third scenario).

Thus, this Court's instruction, which contained both the factors contained in the Eleventh Circuit's Joint Employers Pattern Instruction and the factors and scenarios delineated in the C.F.R., was not erroneous, misleading or confusing.  Rather, the instructions as a whole put into context the legal concept of "joint employers" under the FLSA, and gave full and accurate guidance to assist the jury in its determination.

### D.    The Allegedly Inconsistent Verdict

The Plaintiff also contends that the jury's verdict was inconsistent because although the jury was instructed that Defendant Claude Dormoy was the Plaintiff's employer at Moody, and the jury also found that Defendant Claude Dormoy was Plaintiff's employer at Dorcla, the jury nevertheless concluded that Defendants Dorcla and Moody were not the

25

Plaintiff's joint employers.  The Plaintiff suggests that this Court should reconcile the verdict by entering a judgment as a matter of law establishing that both corporations, as well as Dormoy, were the Plaintiff's joint employers.

However, the Plaintiff's argument fails because the jury's verdict was not necessarily inconsistent.  Rather, in reaching its verdict, the jury could have determined that although the Plaintiff was employed by Defendant Claude Dormoy at both Defendants Dorcla and Moody, those entities and Mr. Dormoy did not function as FLSA joint employers under any of the scenarios provided in 29 C.F.R. § 791.2, or pursuant to the Eleventh Circuit's Pattern Jury Instruction.

Plaintiff seemingly conflates the analysis of whether an officer of a corporation may be held liable as an employer under the FLSA where the officer has operational control over the corporation, with the analysis of whether two corporations and/or employers meet the joint employment test necessary to aggregate a workers' hours to determine whether an FLSA overtime violation has occurred.  *See e.g. Patel v. Wargo*, 803 F.2d 632 (11th Cir. 1986) (analyzing separately whether worker was employee of corporation and issue of whether corporate officer was liable).[17]  In this case, although there was a question of fact regarding whether Defendant Claude Dormoy was the Plaintiff's employer with respect to Ms. Berrocal's work at Dorcla, there was not an issue of whether Mr. Dormoy was the Plaintiff's employer at Moody, because that issue had been resolved as a matter of law by the Court

---

[17]  Similarly, whether two companies constitute a single enterprise for FLSA coverage and whether they are liable as joint employers under § 207 are technically separate issues.  See, e.g., *Patel v. Wargo*, 803 F.2d 632, 637 (11th Cir.1986) ("[T]he enterprise analysis is different from the analysis of who is liable under the FLSA. The finding of an enterprise is relevant only to the issue of coverage.")

before the trial (DE # 66-2 at 15).  However, the fact that Mr. Dormoy was ultimately determined to be the Plaintiff's employer at both Dorcla and Moody, does not, in and of itself, mean that Dorcla and Moody operated as the Plaintiff's joint employers under the FLSA.  Carried to its logical extreme, if the Plaintiff's argument is accepted, two entirely unrelated businesses would be considered joint employers if they hired a manager who supervised an individual employed by both corporations, as long as there were overlapping shareholders.  The undersigned concludes that there is no such "bright-line" rule, and that the totality of the circumstances, as set forth in the jury instructions, must be considered in order to determine whether two businesses are joint employers.

Thus, the Plaintiff has failed to demonstrate that jury's verdict was inconsistent and therefore is not entitled to any relief on this claim.[18]

   E. **Liquidated Damages**

In the instant Rule 50 Motion, the Plaintiff has also requested that the Court award her liquidated damages for Defendant Claude Dormoy's failure to demonstrate that he acted in good faith and had reasonable grounds for believing that his actions were not in violation of the FLSA (DE # 66).  However, the Plaintiff also filed a separate Motion to Liquidate Damages (DE # 69), which is now fully briefed.  The issues raised in the Plaintiff's separately filed Motion are the same as those raised, herein.  Accordingly, the Court will address the Plaintiff's request for liquidated damages in a separate Order, and makes no determination in this Order regarding the merits of the Plaintiff's request for liquidated damages.

---

[18]  The Court need not reach the Plaintiff's arguments regarding damages for failure to pay overtime wages of the Defendants as joint employers because the Court does not find as a matter of law that Defendants Dorcla and Moody jointly employed the Plaintiff.

**VII. <u>CONCLUSION</u>**

**Based on the foregoing, it is hereby**

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Judgment as a Matter of

Law (DE # 66) is **DENIED**.

**DONE AND ORDERED** in chambers in Miami, Florida, on March 31, 2010.

_Andrea M. Simonton_
_____
**ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE**

Copies furnished to:
       All Counsel of Record via CM/ECF

28